W. B. CATHEY v. W. C. SHOPE AND WIFE, INA WILSON SHOPE.

(Filed 14 October, 1953.)

**1. Brokers § 12—**

All the evidence in this case tended to show that the defendants listed their property for sale by plaintiff broker, signed an option and a contract to pay plaintiff upon consummation of the sale a stipulated commission, and that plaintiff procured a purchaser who bought the property in accordance with the option as later modified and extended. *Held:* The court was justified in giving a peremptory instruction in favor of plaintiff in his action to recover the agreed commissions.

**2. Same—**

In a broker's action for commissions it is competent for the broker to introduce testimony as to his efforts to sell defendants' land after it had been listed with him in corroboration of his testimony that defendants listed the land with him, and as tending to establish the relationship between the parties.

**3. Same—**

In a broker's action to recover commissions it is competent for him to testify as to transactions with the defendants tending to show that he was acting as their agent in procuring a purchaser.

**4. Same—**

Where, in a broker's action for commissions, there is no evidence to support the owners' contention that the broker was acting in a dual capacity or that he was acting as agent for the optionee in procuring an option on defendants' land, it is not error for the court to refuse to submit an issue in respect thereto.

**5. Trial § 36—**

Only such issues as are raised by the pleadings and supported by competent evidence should be submitted to the jury.

**6. Brokers § 12: Contracts § 12—**

Where the owners executed an agreement to pay a broker a commission for selling their property, testimony of a statement thereafter made by the broker at a meeting with the optionee and others to the effect that the broker was not getting anything out of the sale, is *held* incompetent in the broker's action to recover his commissions, since the statements are insufficient to constitute a rescission or abrogation of the brokerage contract.

**7. Trial § 14—**

The statutory rule that where a party objects to the admission of evidence it shall be conclusively assumed that he duly excepted to its admission over his objection, does not obviate the necessity for an exception by the adverse party to the court's ruling in those instances in which objection to the admission of the evidence is sustained. Chap. 150, Session Laws of 1949. (G.S. 1-206.)

**8. Brokers § 12: Evidence § 39—**

Testimony by the *feme* owner that the broker stated that no commission would be charged if the owners reduced their asking price for the land is incompetent when the evidence further shows that thereafter the owners executed an agreement to sell at the reduced price solely for the purpose of inducing a sale to a specified corporate prospect, since such testimony is at variance with the written agreement thereafter executed.

**9. Vendor and Purchaser § 5a—**

An agreement which merely extends the time for performance under a prior option cannot otherwise affect the terms of the contract to sell, and therefore interrogations relating to the terms of sale upon the execution of the extension of time are improper.

APPEAL by defendants from *Phillips, J.,* April Term, 1953, BUNCOMBE. No error.

Civil action to recover commissions due on sale of real property.

Defendants owned a dairy farm near Asheville, N. C., containing about 428 acres. In 1946 they listed this property with plaintiff, a real estate broker in Asheville.

In 1951 citizens of Asheville organized a corporation known as the Asheville Industrial Promotion Council (hereinafter referred to as the Council) to seek new industries for Asheville. In August 1951 the Oerlikon Tool & Arms Company (hereinafter referred to as Oerlikon) was quietly seeking a site for a large new plant which would require about 400 acres. In the course of its survey of possible sites, its agents viewed defendants' farm. They then requested the Council to obtain an option on defendants' property.

The Council ascertained that the Shope property was probably listed for sale with plaintiff. Its officers contacted plaintiff and inquired whether he had any property containing approximately 400 acres listed for sale. They did not then give him the name of the prospective pur-

chaser. Plaintiff informed them he had the W. C. Shope property containing about 428 acres listed. An agent of the Council went with him to view the property. The next day, 25 August 1951, plaintiff went to the Shope home and told them he had a prospective purchaser who might buy the land alone. They executed an option and delivered it to plaintiff. At the same time, they delivered to plaintiff a letter addressed to him and containing the following:

"We the undersigned agree to pay you a 5% commission on our farm up to $50,000. and 2½% above $50,000. or when the sale is completed for $100,000, we will pay you $3750.00."

It was decided Oerlikon would require additional acreage, and the Council obtained a number of other options on tracts of land adjacent to or near defendants' property. Plaintiff assisted the Council in obtaining these options.

On 27 September 1951, defendants executed a supplemental contract in which they agreed to reduce the purchase price to $97,000 if the whole tract was purchased, or to $92,000, if 99 acres lying east of Bee Tree Road was excepted. The option of 25 August was attached thereto and made a part thereof.

On 9 November 1951, defendants executed an agreement extending the option executed 25 August, as modified by the contract of 27 September, for an additional sixty days. They were at the time paid an additional $500.

Thereafter the sale of the property was consummated and defendants were paid the sum of $97,000. Plaintiff demanded his commission. Defendants declined to pay, contending plaintiff had waived the same. Thereupon plaintiff instituted this action. At the trial, the court below submitted an issue of indebtedness and the jury answered the same "$3,675.00." The court entered judgment on the verdict and defendants appealed.

*Don C. Young* for plaintiff appellee.
*Fisher & Fowler* and *Harold K. Bennett* for defendant appellants.

BARNHILL, J. The court below gave a peremptory instruction in favor of the plaintiff. Exception thereto poses this question for decision: Does all the competent testimony in this cause, considered in the light most favorable to defendants, tend to show that defendants are indebted to plaintiff in the sum of $3,675? The court below, by its instruction, answered in the affirmative. We agree.

The defendants listed their property for sale with plaintiff. He advertised the same and contacted prospective purchasers. Defendants from

time to time went to his office to inquire as to the prospects of sale. Finally, the Council got in touch with him because it was known, or the Council was informed, that he had the property for sale. He reported to defendants he had a prospective purchaser. After conferring with him as to price, personal property to be excluded, and other matters, they signed an informal option prepared by plaintiff, more favorable to them than their original listing. Thereafter, on the same day, they executed a formal option, prepared by the attorney of the Council, in which they agreed to sell to Francis J. Heazel or his assigns the *locus in quo* at the price of $100,000. At the same time they signed a contract to pay plaintiff, upon the consummation of the sale, the commissions he now claims. The sale was consummated under the terms of the original option as modified by the contract of 27 September and the extension agreement of 9 November 1951.

There is only one inference that may be drawn from this evidence. The plaintiff has fully performed his part of the contract, and defendants must pay him for his services the compensation they agreed to pay. This was the substance of the charge of the court below to which defendants except. It meets our approval. Hence this exceptive assignment of error is overruled.

The evidence offered by plaintiff pertaining to his effort to sell defendants' farm after it was listed with him up to the time he was approached by the Council was admissible in corroboration of plaintiff's testimony that defendants' farm was listed with him for sale and for the purpose of showing the relationship that existed between him and defendants at the time they signed the option of 25 August 1951. He testified he approached them on 25 August as their agent to obtain an option that would in effect "hook the fish" that was "nibbling at the bait." The testimony to which defendants' exceptive assignments of error are directed tends to show that he was then acting as agent of defendants. It follows that defendants' exceptions thereto are without merit.

The record is devoid of any evidence tending to show that plaintiff, in procuring an option and effecting a sale of the property of defendants, was acting in a dual capacity or that he was acting as agent of the optionee in procuring the option of 25 August. Therefore, the court committed no error in declining to submit the tendered issue or in its charge in respect thereto. *Satterwhite v. Hicks,* 44 N.C. 105; *Brown's Heirs v. Patton's Heirs,* 35 N.C. 446; *Lee v. Williams,* 112 N.C. 510.

Only such issues as are raised by the pleadings and supported by competent evidence should be submitted to a jury. *Morrisett v. Cotton Mills,* 151 N.C. 31, 65 S.E. 514; *Braswell v. Johnston,* 108 N.C. 150; *Griffin v. Insurance Co.,* 225 N.C. 684, 36 S.E. 2d 225; *Stokes v. Edwards,* 230 N.C. 306, 52 S.E. 2d 797.

Those who had signed options to sell their property, at the instance of the Council, held a meeting to consider reducing the prices they were demanding so as to bring the total within the amount Oerlikon was willing to pay. Witnesses offered to testify that plaintiff at this meeting addressed the optionors and made the statement, "he wasn't getting a dime out of it," and other statements to like effect. This testimony was properly excluded. It does not appear just when this meeting was held. Certainly it was after the defendants executed the agreement to pay plaintiff a commission for making sale of their property, and the alleged statements were insufficient to constitute a rescission or abrogation of that contract. *Patton v. Lumber Co.,* 179 N.C. 103; *May v. Getty,* 140 N.C. 310; *Manufacturing Co. v. Lefkowitz,* 204 N.C. 449, 168 S.E. 517; *Lewis v. Gay,* 151 N.C. 168, 65 S.E. 907; *Adams v. Battle,* 125 N.C. 152; *Palmer v. Lowder,* 167 N.C. 331, 83 S.E. 464; *Bell v. Brown,* 227 N.C. 319.

Defendants rely heavily on what they term their Exceptions 11 and 12, directed to the exclusion of testimony of the *feme* defendant. No such exceptions were entered of record. Even so, they contend that exceptions are implied under the terms of Ch. 150, S.L. 1949.

The *feme* defendant testified that plaintiff went to the home of defendants 27 September and told them the prospective purchaser would not buy from the various optionors unless the purchase price of the several tracts desired was reduced. They replied: ". . . we were a community citizen people and would be glad to help the community and that we would reduce ours $3,000, (and he told us there would be absolutely no commission when we did that . . .)" Plaintiff moved to strike the testimony in parentheses. The motion was allowed. Defendants contend that under Ch. 150, S.L. 1949, an exception by them to this ruling is implied.

Mrs. Shope was then asked whether she signed another agreement reducing the price $3,000 on 9 November. She answered: "I did, but I did because I was told a story; now that is exactly why; and the paper was never offered me to read." Plaintiff moved to strike. "Motion allowed. That is not in response to the question."

Here again the defendants contend an exception on their part to the ruling of the court is implied.

The contention of the defendants that in law they entered Exceptions 11 and 12, although at the time they remained silent, is without merit.

Ch. 150, S.L. 1949, is short and to the point. It provides:

"Sec. 1. In any trial or hearing no exception need be taken to any ruling upon an objection to the admission of evidence. Such objection shall be deemed to imply an exception by the party against whom the ruling was made."

It simply provides that when a litigant objects to the admission of evidence and his objection is overruled, it shall be conclusively presumed that he duly excepted to the ruling. It makes no provision for the protection of the adversary party who sits by and fails to except when an objection to evidence is sustained. The Legislature wisely omitted any such provision, for a trial judge should be advised, at the time, that his ruling is challenged. The objection gives him notice on the one hand, but silence on the other does not. Instead, it indicates the ruling is accepted as being in accord with rules governing the admission of testimony.

In any event, the ruling of the court was correct. *Feme* defendant testified that after plaintiff stated that no commissions would be charged if defendants reduced their asking price by $3,000, he went to town and returned to their home that night with a contract which she and her husband executed. This is the contract of 27 September reducing the price and in which the inducement or consideration for the reduction is specifically stated as follows:

"Undersigned has been informed by said Francis J. Heazel that said option and options on other land in the same neighborhood have been obtained by him for the purpose of providing site for the construction and operation of a manufacturing plant and that said option given by the undersigned may not be exercised unless the said purchase price stated therein is reduced.

"Therefore, as an inducement to said Francis J. Heazel, Attorney, and also to Asheville Industrial Promotion Council, Inc., to continue thereafter to sell the said land of the undersigned to a corporation that shall use said land as a part of a site for a manufacturing plant and in consideration of said Francis J. Heazel, Attorney, agreeing that said option granted to him shall not be exercised for the benefit of or assigned or transferred to anyone other than a corporation that shall so use said land, it is agreed by undersigned that the purchase price for the land described in the attached agreement is reduced to Ninety Seven Thousand ($97,000) Dollars . . ."

The testimony stricken was at variance with this provision of a written contract thereafter executed and was properly excluded. *Pierce v. Bierman,* 202 N.C. 275.

The question involved in the purported Exception 12 was improper. It incorporated an erroneous conclusion of law. The contract of 9 November was not "an agreement reducing the price." The price was reduced by the contract of 27 September. The contract of 9 November was merely an agreement extending the option of 25 August, as modified by the contract of 27 September, an additional sixty days.

In this connection we may note that the assumption the agreement of 9 November reduced the defendants' asking price by $3,000 no doubt led

to the efforts on the part of defendants to prove statements made by plaintiff prior to the execution thereof, which produced many of the exceptions contained in the record.

We have examined the exceptive assignments of error not herein specifically noted, and we fail to find in them sufficient merit to require discussion.

In the trial below we find

No error.