## RICHARD D. GIBSON v. EARLE WHITTON.

(Filed 16 December, 1953.)

**1. Negligence § 19c—**

Nonsuit on the ground of contributory negligence may be properly entered only when plaintiff's own evidence establishes this defense as the sole reasonable inference deducible therefrom, and it may not be entered when it is necessary to rely in whole or in part on defendant's evidence or when diverse inferences upon the question are reasonably deducible from plaintiff's evidence.

**2. Automobiles §§ 8i, 18h (3) —**

Plaintiff's evidence in this case *held* not to show contributory negligence on his part as a matter of law in colliding with defendant's vehicle at an intersection within a municipality, it appearing upon plaintiff's evidence that he was traveling upon a through street, that defendant's vehicle approached the intersection along the servient highway from plaintiff's left, and that, as the vehicles approached the intersection at approximately the same time, plaintiff assumed that defendant would stop before entering the intersection, and acted on this assumption until too late to avoid the accident.

**3. Compromise and Settlement § 2: Evidence § 42a—**

Evidence of an offer to compromise, as such, is inadmissible as to the party making it.

**4. Evidence § 42a—**

Testimony of plaintiff to the effect that the day after the collision, while both he and defendant were in the hospital, defendant stated that if plaintiff would wait until defendant got out of the hospital defendant would take care of everything, *is held*, when considered in context, not an offer to compromise, but competent as an admission of liability on the part of defendant.

**5. Evidence § 18—**

Where it appears in the record that the credibility of plaintiff's testimony had been challenged by vigorous cross-examination, the ruling of the trial court in admitting testimony corroborating plaintiff will not be held for error.

**6. Same—**

The admission of corroborative evidence rests largely in the discretion of the trial court to keep its scope and volume within reasonable bounds.

**7. Appeal and Error § 6c (4) —**

Objection that portions of corroborative testimony did not in fact corroborate the witness cannot be sustained in the absence of a motion to strike that part deemed objectionable.

APPEAL by defendant from *Sharp, Special Judge,* and a jury, at 27 April Extra Regular Civil Term, 1953, of MECKLENBURG.

GIBSON *v.* WHITTON.

Civil action to recover for personal injuries and property damage resulting from a collision of two automobiles in a street intersection in the City of Charlotte.

The collision occurred at the intersection of East Seventh Street, which runs east and west, and Laurel Avenue, which runs north and south. Stop signs which face north and south on Laurel Avenue at the intersection make East Seventh Street the favored, through street, and Laurel Avenue the servient street.

The collision occurred in the nighttime. The plaintiff was operating his De Soto automobile eastwardly on East Seventh Street; the defendant was driving a Cadillac southwardly on Laurel Avenue. Therefore, as the two vehicles approached the intersection, the plaintiff was on the right. He was also on the through street as designated by the stop signs.

The plaintiff testified in part: "As I approached the intersection . . ., when I was about 100 feet from the intersection of Laurel and Seventh, I noticed the headlights of this automobile. . . . These lights that I observed were coming from the north side; from my left. . . . At the time I first observed these headlights I blew my horn and took my foot off the accelerator. . . . I went on and when I got up approximately 50 feet from the intersection, by then I knew that this automobile, I could see the front of it by then. . . . When I first observed the defendant's vehicle it was, I would say, approximately 25 feet from the intersection. On this occasion there was a stop sign on North Laurel Avenue. The defendant's automobile was north of the stop sign. The stop sign is located approximately 16 feet north of the intersection. His vehicle was, I would say, approximately 10 to 15 feet further from the stop sign. I would say that the defendant's vehicle was traveling between 15 and 20 miles an hour at that time. When I first observed the defendant's vehicle, I would say I was going between 30 and 35 miles an hour. That was when I first observed the lights. When I first observed the vehicle, I would say I was driving between 25 and 30. After I first observed his vehicle, I applied my brakes to stop. The defendant did not stop at the intersection before he entered. . . . The front of my vehicle and the right side of his collided. . . . approximately the middle of the right side of it. After the vehicles collided my vehicle did not travel any distance. . . . the defendant's traveled about 20 feet. It went on the southeast corner and hit this big tree." (Then follows a narrative of the nature and extent of his personal injuries and property damage.)

Cross-examination: ". . . East Seventh is about 50 feet wide . . . I would say that Seventh Street . . . is substantially wider than Laurel; . . . At the intersection of East Seventh and Laurel, East Seventh is downgrade some. The approach to East Seventh on Laurel going south is slightly upgrade. . . . I was on my right hand side of East 7th Street.

I was near the dividing line in the middle of the road. . . . I testified that when I first saw the lights of the Whitton car I estimated that I was about 100 feet west of the intersection. When I first saw the Whitton car, I stated that I was then between 40 and 50 feet west of the intersection. The first part of the Whitton car that I saw was the headlights, the front end of the automobile. Actually seeing the car itself the first I saw was the front end. It had not entered the intersection. When I first saw the headlights, not the beams, but the headlights, the front end of the Whitton car, the Whitton car was approximately 25 feet from the intersection. . . . When I saw the headlights of the other car, the beam itself, I took my foot off the accelerator. I did not put my foot on the brake pedal when I took it off the accelerator. I put my foot on the brake pedal when I was approximately, I'll say 40 or 50 feet from the intersection, when I knew that the car wasn't going to stop. . . . I put my brakes on as hard as I could. I skidded some. I would say I skidded approximately 25 feet, . . . I don't know whether or not I was skidding from the time I put on my brakes until the time of the collision; it happened so quick I couldn't say. I think I was skidding when I hit the Whitton car. . . . He did not enter the intersection before I did. He was driving slower than I was, . . . the Whitton car was on its right side of Laurel Avenue. . . . Whenever the impact, he had just crossed this center line; . . ."

With respect to plaintiff's Exhibit B, he testified on cross-examination as follows: "This is a photograph looking south on Laurel. That is the direction in which the Whitton car was traveling. There is a hedge on top of a brick wall in a yard that goes all the way up to the sidewalk. I would think that the top of that hedge is at least 5 feet higher than the level of the paved portion of North Laurel. Well, you can see the headlights, I don't care if this is 20 feet high. You can see the front end of the Whitton car before it enters the intersection. That hedge was there at that time. That wall was there at that time."

With respect to plaintiff's Exhibit C, he testified on cross-examination as follows: "Those two cars or similar cars were there in about that position. They were cars similar to these. I see on Plaintiff's Exhibit C the top of an automobile between the camera and the chimney on the house beyond Laurel Avenue. That is the top of an automobile. You could see the lights of Mr. Whitton's car there. You could not see the car itself. I saw the car before it entered the intersection."

Recalled: "I had my headlights on immediately before the collision. They were on dim."

Police Officer Wallace, after describing the position of the cars when he arrived at the scene, stated that in his conversation with the defendant at the hospital "He told me he did not stop, that he slowed down but did

not stop." On cross-examination this witness also said he had a conversation with the plaintiff at the hospital: "He did not tell me he was approximately 100 feet west of the intersection when he first saw the headlights or the reflection of the lights on the car. The question that I asked him was the distance the danger is first apparent, . . . and he told me approximately 50 feet. . . ; that he was about 50 feet back from the west of the intersection when he first noticed danger. He estimated he was going 30 to 40 miles per hour at the time. That was when he was about within 50 feet of the intersection . . . ."

The defendant's version of the occurrence as related by him is in part: "We were going south on the right-hand side of the street. As I approached Seventh Street, I slowed up, . . . Then I entered the intersection. I slowed up, and to the best of my recollection I looked to the right and looked to the left, came to a practical stop, possibly not a complete stop; I did not see anything. I drove on . . . started across the street, maybe attained a speed of 10 or 15 miles an hour, then I was hit by the other car. . . . When my car was struck, it was struck just about the center post between the doors. In so far as my car was concerned, the result of the impact was it wrecked the car completely. . . . I was not knocked out of the car. . . . At the time of the impact I think I was slightly south of the intersection of the center lines of the two streets. I was on my right-hand side."

Cross-examination: "I was familiar with this intersection. I knew that Seventh Street was what they called a through street or an arterial street and one of the main highways leading out of Charlotte. I knew it was a heavily traveled street. I knew that there was a stop sign at Seventh and Laurel for traffic on Laurel Avenue. I said that I am not sure that I came to a dead stop. I have a clear recollection that I looked both ways. . . . Looking to the right I was looking west on Seventh Street. That street is straight for a number of blocks from that corner. . . . I did not see a car coming. I imagine there were some cars on the right, but I don't know, that would keep me from seeing a block away. I mean parked on the right. I looked to the right and saw nothing coming and to the left and saw nothing coming. There was nothing in the street or anything in the topography of the land, there was nothing on Seventh Street to keep me from seeing beyond the parked cars. . . . After looking to the right one time, I then looked to the left. I doubt if I ever looked back to the right. I don't recollect whether at the time I did look I had gotten up to where I had a good view of the street. . . . I never did see the Gibson car before the impact; I did not notice it after. I can't testify that I came to a full stop."

The following issues, raised by the pleadings, were submitted to the jury and answered as indicated:

"1. Was the plaintiff Richard D. Gibson injured, and his automobile damaged, by the negligence of the defendant Earle Whitton, as alleged in the Complaint? Answer: Yes.

"2. Did the plaintiff Richard D. Gibson contribute to his injury and damage by his own negligence, as alleged in the Answer? Answer: No.

"3. What amount, if any, is the plaintiff Richard D. Gibson entitled to recover of the defendant Earle Whitton for personal injuries to the plaintiff Richard D. Gibson? Answer: $500.00.

"4. What amount, if any, are the plaintiffs entitled to recover of the defendant Earle Whitton for damage to the automobile of Richard D. Gibson? Answer: $1250.00

"5. Was the defendant Earle Whitton injured by the negligence of the plaintiff Richard D. Gibson, as alleged in the counterclaim? Answer: ............

"6. What amount, if any, is the defendant Earle Whitton entitled to recover of the plaintiff Richard D. Gibson on the counterclaim for personal injuries to the defendant Earle Whitton? Answer: ...............”

From judgment entered on the verdict, the defendant appeals, assigning errors.

*Francis H. Fairley, William H. Booe, and Robinson & Jones for plaintiff, appellee.*

*Helms & Mulliss, John D. Hicks, and Cochran, McCleneghan & Miller for defendant, appellant.*

JOHNSON, J. The defendant urges that his motion for judgment as of nonsuit should have been allowed upon the ground that the plaintiff's evidence establishes contributory negligence as a matter of law.

Contributory negligence is an affirmative defense which must be pleaded and proved. G.S. 1-139. Even so, nonsuit is proper when the plaintiff's own evidence establishes this defense (*Bundy v. Powell,* 229 N. C., 707, 51 S.E. 2d 307), but it may not be entered when it is necessary to rely in whole or in part upon the defendant's evidence, or when diverse inferences upon the question are reasonably deducible from plaintiff's evidence, the rule being that a motion for nonsuit on the ground of contributory negligence will be allowed only when the plaintiff's evidence is so clear that no other reasonable inference is deducible therefrom. *Bundy v. Powell, supra; Beck v. Hooks,* 218 N.C. 105, 10 S.E. 2d 608. See also *Mikeal v. Pendleton,* 237 N.C. 690, 75 S.E. 2d 756; *Grimm v. Watson,* 233 N.C. 65, 62 S.E. 2d 538; *Hobbs v. Drewer,* 226 N.C. 146, 37 S.E. 2d 121.

An examination of the record in the light of these principles of law leaves the impression that the plaintiff made out a clear case of actionable

negligence, free of facts and circumstances shown by his own evidence amounting to contributory negligence as a matter of law. The motion for judgment as of nonsuit was properly overruled.

The cases relied on by the defendant, *Morrisette v. Boone,* 235 N.C. 162, 69 S.E. 2d 239, and *Cox v. Freight Lines,* 236 N.C. 72, 72 S.E. 2d 25, are factually distinguishable.

The next group of exceptions brought forward relate to rulings on the reception of evidence. In response to questions put to the plaintiff in respect to what the defendant said to him at the hospital the day after the collision, the trial court permitted the plaintiff to testify over objecion: "He said if I would wait until he got out of the hospital that he would take care of everything. . . . He said he would take care of everything and I didn't have anything to worry about."

The defendant insists that this line of testimony should have been excluded as amounting to an offer of compromise. It is elemental that evidence of an offer to compromise, as such, is inadmissible as an admission of the party making it. *Dixie Lines v. Grannick,* 238 N.C. 552, 555, 78 S.E. 2d 410; *Merchant v. Lassiter,* 224 N.C. 343, 30 S.E. 2d 217; Stansbury, N. C. Evidence, Sec. 180. Dean Wigmore says: "The true reason for excluding an offer of compromise is that it *does not* ordinarily proceed from and *imply a specific belief that the adversary's claim is well founded,* but rather a belief that the further prosecution of that claim, whether well founded or not, would in any event cause such annoyance as is preferably avoided by the payment of the sum offered. In short, the offer implies merely a desire for peace, not a concession of wrong done." Wigmore on Evidence, Third Ed., Vol. III, Sec. 1061, p. 28.

But be this as it may, the challenged statement, when considered in context, appears not to have been made on the theory of an offer to compromise, but rather as tending to show an admission of liability on the part of the defendant. The evidence was competent and admissible for that purpose. *Wells v. Burton Lines,* 228 N.C. 422, 45 S.E. 2d 569; *Hobbs v. Coach Co.,* 225 N.C. 323, 34 S.E. 2d 211. See also *Brown v. Wood,* 201 N.C. 309, 160 S.E. 281.

The defendant also assigns as error the rulings of the court in permitting the witness M. L. Kimbro to recount, over objections, the circumstances surrounding the wreck as told him by the plaintiff. The following is an illustrative portion of witness Kimbro's testimony to which the defendant excepted:

". . . He (the plaintiff) told me roughly, . . . how this collision came about.

"Q. What did he tell you?

"Objection.

"Mr. Fairley: I ask it for the purpose of corroboration, your Honor.

· "COURT: OVERRULED. This is offered only for the purpose of corroborating Mr. Gibson, if you find it does corroborate.

"EXCEPTION No. 21.

"A. . . ., and he told me after he stopped at the red light at Pecan and Seventh, he was coming on down, he seen the headlights of the car coming up over the rise of Laurel Avenue. He thought he was going to stop. . . .

"Q. Did he say whether or not the car came to a stop at the stop sign?

"Objection. Overruled. EXCEPTION No. 22.

"A. He said it didn't stop; that it came on out in front of him."

The defendant seeks to invoke the rule that corroborative evidence of this kind—previous consistent statements—ordinarily is not admissible to bolster the testimony of a witness until the witness has been impeached in some way. Stansbury, N. C. Evidence, Sec. 50. The gist of defendant's contention is that the plaintiff had been cross-examined in mere routine fashion without impairment of his credibility. However, our examination of the record impels the other view. The general tenor of the cross-examination, covering 10 pages of the printed record, discloses an earnest and vigorous effort to discredit the plaintiff's testimony in chief. And it is manifest that the efforts of counsel were not without some measure of success. As to this, attention is directed to the plaintiff's admission of error in his drawing: "The first mark indicating the position of my automobile that I made was right here at the south curb. . . . That's the mark that I put on there. When I put that mark there, well, I just made a mistake; I meant to put it up closer to the center line. . . ." It is also noted that before the witness Kimbro testified as to his conversation with the plaintiff, the defendant had cross-examined plaintiff's witness Wallace in respect to the statements plaintiff had made to him about the collision. The application of the rules regulating the reception and exclusion of corroborative testimony of this kind, so as to keep its scope and volume within reasonable bounds, is necessarily a matter which rests in large measure in the discretion of the trial court. The rulings of Judge Sharp in admitting the corroborative testimony of the witness Kimbro have the sanction of authoritative decisions of this Court. *S. v. Exum,* 138 N.C. 599, 50 S.E. 283. Stansbury, N. C. Evidence, Sec. 31, footnotes, for collection of cases. For criticism of the rule which sanctions this kind of evidence, see Wigmore on Evidence, Third Ed., Sec. 1122 *et seq.*

As to the further contention that portions of the corroborative statements did not in fact corroborate the plaintiff's testimony (*S. v. Rollins,* 113 N.C. 722, 18 S.E. 394), it is enough to say that no motion was made to strike any part of the witness' answers. This renders the defendant's latter contention untenable. The rule is that where a question asked a witness is competent, exception to his answer, when incompetent in part,

should be taken by motion to strike out the part that is objectionable. *Steelman v. Benfield,* 228 N.C. 651, 46 S.E. 2d 829; *Luttrell v. Hardin,* 193 N.C. 266, 136 S.E. 726. See also *Cathey v. Shope,* 238 N.C. 345, 78 S.E. 2d 135.

The remaining exceptions brought forward, including some 13 which relate to the charge, have been examined. They are without substantial merit. The rulings and instructions to which these exceptions relate are either correct or nonprejudicial under the rule of contextual construction. Prejudicial error has not been made to appear. The verdict and judgment will be upheld.

No error.