KEVIN WALKER O'QUINN v. DR. BRUCE H. DORMAN, DR. THOMAS CRAVEN, JR., DR. CHARLES L. NANCE, JR.

No. 775SC143

(Filed 7 March 1978)

1. Physicians, Surgeons and Allied Professions § 15.1— expert testimony—hypothetical question based on evidence

In an action to recover damages for the alleged negligence of defendants in treating plaintiff's broken arm, evidence was sufficient to place before the

jury facts from which the jury could infer that plaintiff's wound had no appearance of infection when one defendant split the cast on plaintiff's arm on a given date; therefore, the trial court did not err in allowing defendant's expert witnesses to answer a hypothetical question which included this fact assumed to be found by the jury: "that [defendant] cut the cast, opened it, visualized the wound, which had no appearance of infection."

**2. Witnesses § 8— cross-examination of defendants—credibility questioned—evidence of reputation properly admitted**

Where both defendants testified and each was cross-examined extensively by plaintiff's counsel, obviously for the purpose of attempting to cast doubt upon the truthfulness of their testimony, evidence of defendants' general reputation as bearing on their credibility as witnesses was admissible; moreover, plaintiff's objections to the evidence of defendants' reputation came too late where fifteen witnesses testified with respect to reputation before defendant made objection.

APPEAL by plaintiff from *Fountain, Judge.* Judgment entered 30 December 1975, in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 7 December 1977.

This action was instituted in February 1975 to recover hospital and medical expenses, loss of earnings and earning capacity, and other damages allegedly resulting from the negligence of defendants in treating plaintiff's broken arm. In May 1967, when plaintiff was 13 years of age, he suffered a compound fracture of both bones in his left forearm when he fell upon his outstretched arm upon completing a pole vaulting. The original complaint alleged an expenditure of some $15,000 for hospital and medical expense. By amendment this figure was reduced to approximately $750, the amount expended by the plaintiff since his eighteenth birthday.

Prior to trial, plaintiff filed a "stipulation and motion" by which he stipulated that each of the defendants had an excellent reputation, both personally and professionally, and moved that an order be entered "recognizing that plaintiff has stipulated to the excellent reputation, both personally and professionally, of all three of the defendants, and that that so-called issue is not involved in the case; and restraining the defendants from calling or offering witnesses before the jury to testify as to the character or reputation of the defendants or either of them." The court denied the motion. The jury answered the first issue in favor of the defendants. Plaintiff appeals, assigning as error the denial of the

motion that no character evidence be admitted and the hypothetical question asked by defendants of their expert witnesses.

*Eugene H. Phillips and Goldberg and Anderson, by Frederick D. Anderson, for plaintiff appellant.*

*Marshall, Williams, Gorham and Brawley, by Lonnie B. Williams, for defendant appellees.*

MORRIS, Judge.

Although the record caption carries the name of Dr. Charles L. Nance, Jr., as a defendant, the court allowed a motion to dismiss as to him at the end of plaintiff's evidence and no objection was noted nor exception taken to this action of the court.

The Record indicates that this trial was begun on 15 December 1975 and was concluded on 30 December 1975. The Record before us contains only those excerpts and portions of the evidence which plaintiff feels is pertinent to the challenged portion of the hypothetical questions and those portions of the testimony and proceedings pertinent to the character evidence. We assume, as we must, that all of the relevant testimony is before us. Defendants do not challenge this but do suggest that the 30-day period available to them after service of the Record on Appeal was totally insufficient to allow them to obtain a transcript and narrate the testimony which the reporter (according to orders obtained by appellant for extensions of time) estimated would consume not less than 2,000 pages.

[1] Plaintiff's first assignment of error is directed to the court's overruling plaintiff's objection to the hypothetical question posed to defendants' expert witnesses. The question posed to Dr. Donald David Getz included this fact assumed to be found by the jury: "that Dr. Dorman cut the cast, opened it, visualized the wound, which had no appearance of infection." The hypothetical questions posed to Dr. Walter F. Weis, Dr. Samuel Arthue Sue, Jr., and Dr. Charles Nance all contained an almost identical fact: "Dr. Dorman cut the cast and opened it to some extent and saw the wound, which had no appearance of infection." Plaintiff contends that this assumed fact was not in evidence.

In *Ingram v. McCuiston*, 261 N.C. 392, 399-400, 134 S.E. 2d 705, 711 (1964), the Court, speaking through Justice Sharp, now Chief Justice, said:

"Under our system the jury finds the facts and draws the inferences therefrom. The use of the hypothetical question is required if it is to have the benefit of expert opinions upon factual situations of which the experts have no personal knowledge. . . .

To be competent, a hypothetical question may include only facts which are already in evidence or those which the jury might logically infer therefrom. *Jackson v. Stancil*, 253 N.C. 291, 116 S.E. 2d 817; Stansbury, N.C. Evidence, s. 137 (2d Ed. 1963) and cases therein cited."

Applying the foregoing criteria for competency to the evidence furnished by plaintiff, we conclude that the court correctly overruled plaintiff's objection. Portions of the evidence, we think, are sufficient to place before the jury facts from which the jury could logically infer that the wound had no appearance of infection when the cast was split by Dr. Dorman on Friday, 2 June. Dr. Dorman was asked whether he examined the wound on 2 June. He replied that he did. He was then asked how he examined the wound. He answered: "When the cast was split, and then it was opened, I stated in the nurse's notes, a small amount. When this happened I split the cast on the ulna side as I indicated with my hand. When I split the cast I also split the cotton that is under the cast and I would have to see the wound." He further testified that, although he did not actually recall seeing the wound and did not split the cast for that purpose, "it would have been unavoidable that I could not have seen the wound." Dr. Dorman stated that he split the cast from the distal portion of the cast, which would have extended down to the junction of the small finger in the hand, along the ulna side of the cast up to above the incision; that it would have to be split above the area of the injury so that when the plaintiff's arm was put down from its raised position it would not swell. He further testified that he did not remember exactly what happened, but if he did not see anything unusual he would not necessarily have recorded it, but if he found something unusual he would have recorded it, and "[o]n Friday, June 2nd, the wound was not opened and no culture of any type was done. There was no reason to do that. No blood

laboratory work was done and no wimalysis. I saw no reason to do any of these tests. I didn't see any indication for doing any of these procedures. There was no indication of infection, in my opinion."

Dr. Craven testified that the wound could be seen "adequately" through the slit in the cast; that the nurse, on Saturday afternoon, reported that she had seen some blisters on his arm; that he investigated, saw the blisters where the cast had been cut, spread the cast a little wider, and the wound did not appear to be acutely inflamed or require any further treatment. Having seen the wound, he was very well reassured that it was not obviously infected.

It is clear that there was ample evidence that Dr. Dorman "cut the cast and opened it to some extent". There was also ample evidence from which the jury could logically infer that he "saw the wound, which had no appearance of infection". This assignment is overruled.

[2] Plaintiff's only other assignment of error is that "[t]he court erred in permitting approximately 30 witnesses to the good reputation of the defendants to either testify, or to be tendered to testify, or to have their names announced to the jury, the only effect of which was to prejudice the plaintiff's case with the jury, since reputation was not in issue, the plaintiff having theretofore stipulated to the excellent reputation of each defendant."

Here Nurse Jordan, who testified for plaintiff, testified on cross-examination without objection with respect to defendant Dorman's reputation. Drs. Weis and Sue, expert witnesses for defendant, also testified as to reputation without objection. Drs. James and Nicholson testified, without objection, as to reputation, and defendants then tendered seven doctors who would testify to the same facts. There was no objection. Defendants then put on three more character witnesses, two of whom were nurses, without objection. Defendants then put on John Newton to testify with respect to Dr. Dorman's reputation as an orthopedic surgeon. Plaintiff asked for a *voir dire* examination, but none was had. It developed that the witness was an amputee and had been for two years. Plaintiff did not object. He did, however, object to the testimony of the last two witnesses as to Dr. Dorman's reputation as an orthopedic surgeon. The objections were over-

O'Quinn v. Dorman

ruled. On appeal, plaintiff contends that reputation and skill were not at issue. Plaintiff alleges that defendants did not properly treat his broken arm. Defendants deny that their treatment was in any way negligent.

Here both defendant Dorman and defendant Craven testified and each was cross-examined extensively by plaintiff's counsel, obviously for the purpose of attempting to cast doubt upon the truthfulness of their testimony. "Where a party testifies, it is competent to show his general reputation as bearing on his credibility as a witness. (Citations omitted.)" *Lorbacher v. Talley*, 256 N.C. 258, 260, 123 S.E. 2d 477, 479 (1962), and exclusion of evidence offered for such purpose is prejudicial error. *Wells v. Bissette*, 266 N.C. 774, 147 S.E. 2d 210 (1966), and cases there cited. Particularly is this true where the credibility of his testimony is challenged. Not until the last two witnesses testified did plaintiff interpose objection.

We agree that in this case an unusually large number of witnesses was allowed to testify as to reputation. However, "[t]he number of persons that a party who testifies in a civil action, such as in the instant cases, will be permitted to call to the witness stand to testify as to his general reputation as bearing on his (the party's) credibility as a witness, is necessarily a matter which rests in a large measure in the sound discretion of the trial judge. The rationale of such rule is to keep the scope and volume of such testimony within reasonable bounds. *Gibson v. Whitton*, 239 N.C. 11, 17, 79 S.E. 2d 196, 201." *Wells v. Bissette, supra*, 266 N.C. at 777, 147 S.E. 2d at 213. Perhaps this case comes very close to failing to keep the scope and volume of such testimony within reasonable bounds. However, plaintiff has failed to object in apt time. His objections to the testimony of the last two witnesses comes when the horse is out of the barn. Nor has he shown any abuse of discretion.

No error.

Judges HEDRICK and ARNOLD concur.