STATE OF NORTH CAROLINA v. JAMES G. LEE AND JOHNNY ALLEN WOODLE

No. 7512SC456

(Filed 17 December 1975)

1. **Criminal Law § 92— coerced actions by codefendant — consolidated trial**
   Pleas of not guilty by one defendant and the second defendant's contention that his actions were coerced by the first defendant's threats were not antagonistic defenses that required separate trials of defendants on identical charges of armed robbery and kidnapping.

2. **Criminal Law § 113— two defendants — conflicting instructions as to permissible verdicts**
   The court in a consolidated trial of two defendants erred in giving the jury conflicting instructions with respect to the permissible verdicts as to each defendant.

APPEAL by defendants from *Bailey, Judge.* Judgment entered 20 January 1975 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 18 September 1975.

Defendant Lee was tried on separate bills of indictment for the kidnapping and armed robbery of Fred Yarborough and the kidnapping and armed robbery of Terry Ann Green.

Defendant Woodle was tried on similar bills for the same offenses. Over defendants' objections the cases were consolidated for trial.

The evidence, in the light most favorable to the State, tends to show the following.

About 10:45 p.m. on 3 May 1974, Terry Ann Green and Fred Yarborough were in an automobile which was parked in a field near Hope Mills. Defendants, carrying flashlights and a gun, came up to the car. Lee pretended that he and Woodle were policemen looking for trespassers, liquor and dope. Defendant Lee pointed a gun at Yarborough's head. Defendant Woodle opened the door on Green's side of the car and told her to empty her purse into her lap. Woodle was holding a pool stick that looked like a gun to Green. Nothing was taken from either victim at that time. Green and Yarborough were ordered out of the automobile and made to walk along a railroad until they reached a trestle. It developed that Lee and Yarborough were acquainted. Lee began hitting Yarborough over the back of the head with the pool stick. Lee then demanded Yarborough's money. Yarborough gave him some money but not all that he had. Lee again struck Yarborough whereupon Yarborough gave Lee the rest of his money. During this beating Woodle was holding the gun. Lee told Woodle to take Green's money. Woodle asked how much she had and when she responded that she did not know, Woodle directed her to take it out. She handed Woodle her billfold, which he refused, saying that he "just wanted the money." She took about $73.00 from her billfold and handed it to Lee. Lee then looked at the injuries to Yarborough's head and said that he would have to finish him off. Yarborough stumbled or ran down the hill towards the water under the trestle. Lee shot at him several times and then told Woodle to shoot and see if he could hit Yarborough. Woodle shot at him several times. Yarborough went under the water, came up and was hit by one of the bullets. He then stayed low in the water and crawled into some weeds. He was later able to make his way to safety. Woodle marched Green across the trestle at gunpoint while Lee attempted to determine whether Yarborough was dead. At one point, Woodle placed the gun at Green's temple. Lee then came back, reported that Yarborough was dead and left. Woodle then, at gunpoint, forced Green to walk back to Yarborough's car. They drove away and met Lee. The three then rode around in Lee's automobile. Lee told Woodle

that he was going to kill Green but Woodle apparently persuaded him to relase her a short distance from her home. Before letting her out of the car, Lee told Green that it would only take two sticks of dynamite to blow up her house if she talked to the police.

Defendants' motions for nonsuit on the kidnapping charges were allowed at the close of the State's evidence.

Woodle testified in his own behalf. He said he had known Lee since 1968 when Lee married his sister. Earlier, on the evening of the robbery, the pair had been shooting pool. Later they took Woodle's loaded rifle and flashlights and walked along a dirt road, intending to shoot rabbits. When they saw the parked automobile, Lee suggested that they play a joke on the occupants and told Woodle if he didn't go along with what he was about to do, that he would shoot him. His description of the events that took place thereafter was, in most material respects, substantially as related by the victims. He did, however, deny that he robbed or intended to rob or assault either of the victims. He claimed that when he fired the rifle he shot in the air in an effort to empty the rifle. He further stated that both victims volunteered to give Lee their money. A law enforcement officer, testifying for Woodle, said that a few days after the robbery Woodle gave him a statement substantially in accord with Woodle's testimony at trial. Woodle also offered evidence calculated to show that his character and reputation were good.

Lee offered no evidence.

The jury found Lee guilty of armed robbery in both cases. It found Woodle guilty of common law robbery of Yarborough and assault with a deadly weapon on Green.

*Attorney General Edmisten, by Associate Attorney T. Lawrence Pollard, for the State.*

*Smith & Geimer, P.A., by W. S. Geimer and Kenneth Glusman, for defendant appellant James G. Lee.*

*James D. Little, Public Defender, Twelfth Judicial District, for defendant appellant Johnny Allen Woodle.*

VAUGHN, Judge.

The evidence was sufficient to permit the jury to find defendants guilty as charged. There was, therefore, no error in failing to grant defendants' motions for nonsuit.

[1] Defendant Lee contends that it was prejudicial error to consolidate the cases against him with those against Woodle. He argues primarily that Lee's denial of any guilt by his plea of not guilty and Woodle's contention that his actions were coerced by Lee's threats are antagonistic defenses that require separate trials as a matter of law. We reject this argument. Certainly Woodle's testimony was antagonistic to Lee's plea of not guilty. That fact standing alone, however, is not sufficient to require separate trials. All of the competent evidence introduced at the joint trial would have been competent against Lee at a separate trial. They were charged with identical crimes that occurred at the same time and place. The court, therefore, did not abuse its discretion in ordering that the cases be consolidated.

[2] Both defendants bring forward assignments of error directed at the charge of the court. The judge who presided over this trial is able and experienced and it clearly appears that he endeavored to conduct a fair and impartial trial. Nevertheless, we must agree that the charge, when taken as a whole, contains erroneous and conflicting instructions on material questions that the jury was called upon to resolve. In particular, he gave conflicting instructions with respect to the permissible verdicts as to each defendant. The charge takes up about 33 pages in the record and we do not elect to reproduce it here in order to illustrate the prejudice to defendants.

Counsel for appellant Lee aptly observes that a correct charge could be gleaned from the whole if the conflicting instructions could be removed. In part the State responds, "[i]n a case involving multiple defendants, multiple victims, and multiple charges with numerous lesser included offenses, it is quite easy to confuse a jury even when a proper instruction is given." Even if that is the case, we simply say that the confusion is assured when incorrect and conflicting instructions are given. We also realize the almost impossible burden the case law of this State has imposed on the trial judges with reference to their instructions to the jury and that the burden was made heavier when all of these cases were consolidated.

Nevertheless, the court elected to compound its burden when it granted the State's motion to consolidate the cases. Each defendant is entitled to the same clarity in the instructions necessary to promote a fair determination of his guilt or innocence of each offense in a joint trial, as he would be given if tried separately.

For the reasons stated there must be new trials of all of the cases.

New trials.

Chief Judge BROCK and Judge MARTIN concur.