STATE OF NORTH CAROLINA v. BOBBY LEE HENLEY

No. 132

(Filed 5 February 1979)

**1. Criminal Law § 87.1— sexual matters—leading questions proper**

    The trial court in a first degree rape prosecution did not err in allowing the district attorney to ask the prosecuting witness leading questions to establish the essential elements of rape, since the court had discretionary authority to permit leading questions concerning a subject of a delicate nature, such as sexual matters, and defendant failed to show that he was prejudiced by the leading questions in light of the prosecuting witness's prior testimony.

**2. Criminal Law § 169.3— objection to corroborative evidence—no objection to other similar evidence—objection waived**

    Defendant's objection to the admissibility of corroborative evidence by one witness was waived where seven other witnesses gave substantially similar corroborative evidence and defendant made no objection.

APPEAL by defendant under G.S. 7A-27 from *Lupton, J.,* 17 July 1978 Criminal Session of Superior Court, FORSYTH County.

Defendant was charged in a bill of indictment with the first degree rape of Thresa Bernice Phelps. Defendant entered a plea of not guilty, and the jury returned a verdict of guilty of first degree rape. Judgment was entered imposing a sentence of life imprisonment.

The State's evidence tended to show the following: On 20 April 1978, at approximately 6:30 p.m., Thresa Phelps, a 23 year old nursing school student at Winston-Salem State University, was alone in her car driving to her home after having dinner with her husband's parents. As she stopped for a stop sign at an intersection, defendant opened the door on the passenger's side, brandished a pistol, told Thresa "not to try anything foolish", and seated himself in the front seat on the passenger's side. Pointing the pistol at Thresa's waist, defendant instructed her where to drive until they reached a secluded spot out in the county. There the defendant directed Thresa to remove her clothes from her waist down, which she did, and defendant did likewise. At all times, defendant held the pistol in his right hand. Defendant then had sexual intercourse with Thresa. Thresa submitted to defendant because of her fear that he would shoot her if she did not. Defendant then told Thresa to get her clothes on, and he directed

her where to drive. Thresa testified: "He [the defendant] said, 'well, thank you for letting me invade your privacy.' He also said that if by chance we were to meet again, we would do it again. He said, 'Are you going to tell?' I said, 'No.' He said, 'Well, it wouldn't do you any good, anyway.'" Defendant finally left the car while in a parking lot to which he had directed Thresa, and walked away.

Thresa returned to her home at approximately 8:30 p.m. and immediately called one of her instructors who in turn called "Rape Line" for her. Thresa then called her pastor's wife and another of her instructors both of whom immediately went to Thresa's home. At approximately 9:00 p.m. Thresa's husband returned home from his night classes at A&T University, and the police were notified. Thresa related the events to the police and the others, and she was then taken to the hospital for examination.

On the day in question the sun was still shining at the time defendant entered Thresa's car, and was shining during part of the time they were riding to the secluded spot. Thresa observed defendant face to face and gave the police a description of his face, his height, and the clothes he was wearing. Thresa recognized defendant about one week later when she saw him walking along the street in front of her apartment while she was driving out of her parking lot. She testified: "He looked at me and I looked at him. He stood there and I just wheeled on out." Thresa reported this sighting to a police officer but no arrest was made. About two weeks later Thresa again saw the defendant walking along a street. She called the police and gave a description of the place she saw defendant and of the clothing he was wearing. In about 15 minutes an officer brought defendant in a squad car to Thresa's location. She immediately identified defendant as the man who had raped her. Defendant was then placed under arrest. He declined to be interrogated.

Defendant's evidence tended to show the following: During all of the afternoon in question he was in his parent's home. At 6:15 p.m. the defendant along with his mother and father had just finished eating his evening meal and defendant was washing the dishes. Defendant's brother-in-law arrived at approximately 6:15 p.m. to bring his children to stay while he and his wife attended a

meeting. The brother-in-law visited about 15 minutes before returning home. Defendant finished washing the dishes and went upstairs to his room where he remained the rest of the evening.

*Attorney General Edmisten, by Assistant Attorney General Thomas J. Moffitt, for the State.*

*White & Crumpler, by Fred G. Crumpler, Jr., G. Edgar Parker, and David R. Tanis, for the defendant.*

BROCK, Justice.

Defendant's assignments of error Nos. 2, 5, 6, 8 and 9 are deemed abandoned. "The function of all briefs required or permitted by these rules is to define clearly the questions presented to the reviewing court and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon. Review is limited to questions so presented in the several briefs. Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief are deemed abandoned." Rule 28, North Carolina Rules of Appellate Procedure. This opinion is limited to a discussion of assignments of error Nos. 1, 3, 4 and 7.

[1] By his first assignment of error defendant contends that the trial judge abused his discretionary authority by permitting the district attorney to propound leading questions to the prosecuting witness to establish the essential elements of rape.

It is well established in this jurisdiction that the trial court has discretionary authority to permit leading questions in proper instances such as when the inquiry is into a subject of delicate nature such as sexual matters, and that an appellant must show prejudice before the action of the trial court will be disturbed. *State v. Manuel,* 291 N.C. 705, 231 S.E. 2d 588 (1977). In *State v. Brunson,* 287 N.C. 436, 215 S.E. 2d 94 (1975) the rule was thus stated: "[T]his Court has wisely and almost invariably held that the presiding judge has wide discretion in permitting or restricting leading questions. When the testimony so elicited is competent and there is no abuse of discretion, defendant's exception thereto will not be sustained." *Id.* at 444, 215 S.E. 2d at 99.

Defendant's exceptions Nos. 1 and 2 form the basis for this first assignment of error. Exception No. 1 discloses the following:

"Q. Well, once he entered you, what, if anything, did he do?

A. He just, well, moved around, if that's what you are saying.

Q. All right. And did he reach a climax?

A. It appeared that he did."

OBJECTION: OVERRULED.

DEFENDANT'S EXCEPTION NO. 1

Conceding arguendo that the question was leading it was nevertheless a permissible question. *State v. Greene*, 285 N.C. 482, 492, 206 S.E. 2d 229, 235 (1974).

The question that is the subject of defendant's exception No. 2 is as follows:

"Q. You did not consent to him having intercourse with you except at the point of a gun?

A. Right."

OBJECTION: OVERRULED

DEFENDANT'S EXCEPTION NO. 2

Although we agree with defendant that this latter question was leading, we view it as non-prejudicial because of the witness' prior testimony. The witness has already testified that defendant pointed the pistol at her when he opened her car door, that he kept it pointed at her as she drove under his directions, and that he held the pistol in his right hand at all times. She further testified:

"Q. During the time that the man was on top of you, what was your state of mind?

A. Well, at that time, I was just trying to—I was trying to forget. I was praying at the same time that I didn't get killed, and I was just sitting, well, there gritting my teeth, hating every minute of it."

Defendant's first assignment of error is overruled.

Defendant's assignment of error No. 3 alleges prejudice to him, by reason of a question propounded to a State's witness by

the district attorney even though the trial judge sustained defendant's objection to the question. This argument is without merit. The district attorney asked a police identification technician if, in his opinion, State's exhibit No. 1 (a photograph of a composite drawing made from the description Thresa Phelps had given the police of her assailant which had been identified, admitted into evidence, and presumably exhibited to the jury) was a likeness of the defendant. Defendant's objection was promptly sustained by the trial judge and the witness did not answer. This assignment of error is overruled.

[2] Defendant's assignment of error No. 4 challenges the rulings of the trial judge in admitting, over objection, prior statements of Thresa to others for the purpose of corroboration. "The application of the rules regulating the reception and exclusion of corroborative testimony of this kind, so as to keep its scope and volume within reasonable bounds, is necessarily a matter which rests in large measure in the discretion of the trial court." *Gibson v. Whitton*, 239 N.C. 11, 17, 79 S.E. 2d 196, 201 (1953). A total of eight witnesses testified as to prior statements of Thresa describing the events and her attacker. Yet defendant brings forward exceptions to the testimony of only one of these eight corroborative witnesses. In view of this situation, a well established rule comes into play. When incompetent evidence is admitted over objection, but the same evidence has theretofore or thereafter been admitted without objection, the benefit of the objection is lost. *See Harvels, Inc. v. Eggleston*, 268 N.C. 388, 150 S.E. 2d 786 (1966); 1 Strong's North Carolina Index 3d, Appeal and Error, § 30.1. Nevertheless, defendant launches an attack on the liberality of the North Carolina rule upon the admissibility of such corroborative evidence. We are not convinced that change is either needed or desirable. An excellent observation on the question was made by Dean Henry Brandis, Jr. as follows: "Particularly this latter aspect of the North Carolina rule has been subjected to severe criticism; but the present author believes that sound practical reasons justify it. The cases reflect few, if any instances in which the reception of such evidence has unduly prolonged trials or unfortunately confused the issues. Identifying the substantive evidence which is credible is the main task of the jury in many, if not most trials; and, in the view of this author, trial judges should have wide discretion in admitting evidence which they believe

may aid the jury in appraising credibility. The North Carolina rule allows this and thus, at the appellate level, avoids much technical, and largely profitless, disputation as to the precise occasions on which corroborative evidence should be received." 1 Stansbury's North Carolina Evidence, § 52, pp. 149-150 (Brandis Rev. 1973).

The defendant further argues that even if we do not see fit to reject the present North Carolina rule, and we do not, the trial court erred in giving its limiting instruction on the manner in which the jury should consider evidence of prior consistent statements. Upon objection being overruled as to the admissibility of evidence of a prior consistent statement, if counsel desires a limiting instruction he should request it. At no point in the present case did counsel make such a request. Even so, on numerous occasions the trial court upon its own initiative gave a limiting instruction. Each was substantially the same. Defendant's argument is addressed only to the limiting instruction given as the seventh corroborating witness testified. We have examined this instruction and find that it substantially complies with the law. Defendant has shown no prejudice. Defendant's assignment of error No. 4 is overruled.

Defendant's assignment of error No. 7 contends that the trial judge expressed an opinion upon the evidence as he was summarizing the defendant's evidence. Defendant cites us to a point in the instructions where the trial judge summarized a portion of defendant's evidence by stating that there was evidence which tended to show that defendant was not the man that got in the prosecuting witness' car. The judge then said, "don't consider that", and proceeded to say that there was evidence that tended to show that the defendant was not the man that the prosecuting witness said got in her car.

We find no intimation from the trial judge of an opinion as to whether any fact had or had not been proved. Defendant's assignment of error No. 7 is overruled.

From the whole record we conclude that defendant had a fair trial, free from prejudicial error.

No error.