STATE OF NORTH CAROLINA v. CARLIE DANNY WRIGHT

No. 121

(Filed 27 January 1981)

1. Criminal Law §§ 71, 73.4, 169.3— arson case — witness's statement as to cause of fire

The trial court in an arson case did not err in allowing the State's witness to testify that, upon discovering the fire, she immediately exclaimed to the driver of the car in which she was riding that, "That boy [defendant] just set that girl's house on fire," since the statement accusing defendant of arson was an exclamation in response to the surprising discovery of the fire, made without time for reflection or fabrication, and was admissible as a spontaneous declaration; the statement was uttered so close in time to the events surrounding the burning that it could be admitted under the *res gestae* exception to the hearsay rule; and defendant waived his objection to the testimony when he failed to object to similar statements made by another State's witness.

2. Arson § 4.1— arson of girlfriend's apartment — sufficiency of evidence

Evidence was sufficient to be submitted to the jury in an arson case where it tended to show that defendant had a motive to harm the person whose apartment was burned, and that he was angry over her decision to terminate their relationship; defendant had an opportunity to commit the crime since he knew that his girlfriend was not at home on the evening of the crime; testimony from several witnesses indicated that defendant was in the immediate vicinity of the apartment building just moments prior to the discovery of the fire; defendant was seen driving away from the area at a high rate of speed; the fire was started by igniting rags which had been piled on the living room sofa and on the bed; two officers stopped defendant a few hours after the fire driving a car matching the description given by several witnesses as the automobile in the area of the crime just prior to the fire; and upon approaching the car, the officers observed a bale of rags and a propane torch on the floor board.

3. Arson § 6; Constitutional Law § 33— punishment for arson — no ex post facto law

There was no merit to defendant's contention that the trial court imposed an *ex post facto* punishment upon him because, pursuant to the statute in effect at the time of the burning, he would have been eligible for parole under a sentence of life imprisonment after serving ten years, but he was instead sentenced under statutes which changed the time period required before he could be considered eligible for parole from ten to twenty years, since the period of imprisonment required before defendant could be considered for parole was twenty years under the statutes in effect both at the time of the offense and at the time he was sentenced. G.S. 148-58; G.S. 15A-1371.

Justice MEYER did not participate in the consideration or decision of this case.

DEFENDANT appeals from judgment of *Brannon, J.*, entered at the 12 May 1980 Criminal Session of Superior Court, WAKE County.

Defendant was tried upon an indictment, proper in form, charging him with arson. The jury found defendant guilty of arson, and from the trial court's judgment sentencing him to imprisonment for the term of his natural life, defendant appeals.

The State's evidence tended to show that at approximately 7:00 p.m. on 15 September 1976, Ms. Peggy Mayo's apartment at 1400 Creech Road in Garner, North Carolina, was gutted by a deliberately set fire. Ms. Mayo testified for the State that she left her apartment between 5:15 and 5:30 p.m. on that date and drove to her grandmother's home to pick up her daughter. While she was at her grandmother's, defendant arrived and asked to speak to her. At trial Ms. Mayo described her relationship with defendant as "girlfriend and boyfriend for approximately six years." On the date of the fire the two were in the process of severing their relationship. When defendant appeared at her grandmother's between 6:00 and 6:15 p.m. on 15 September 1976, Ms. Mayo paid him some money she owed him and informed him that she did not wish to speak with him again. By the time Ms. Mayo returned to her apartment, the fire had been extinguished.

State's witness Olivia Herd, who lived in the apartment next to Ms. Mayo's, testified that she was riding in a car near her apartment building at approximately 6:30 p.m. on the day of the fire when she observed defendant driving from behind the apartment complex and away from the building at a high rate of speed. She described the car defendant was driving as a small, gold Ford automobile which she had noticed parked behind her apartment building on several occasions. She had seen defendant a number of times during his visits to Ms. Mayo's apartment and recognized him as the person driving the gold Ford. A few minutes after she observed defendant, Ms. Herd noticed that the curtains at the front window of Ms. Mayo's apartment were on fire. She stated that she then turned to the driver of the car in which she was riding and said, "That boy [defendant] just set that girl's house on fire."

Hiram Byrd, the driver of the car in which Ms. Herd was riding, testified that just as he was beginning to turn into the driveway of the apartment complex at issue, he nearly collided with a gold Ford Falcon automobile which had just come from behind the apartment building and was proceeding down the driveway. Mr. Byrd backed his car out of the driveway to allow the gold car to pass. He stated that he recognized the car as one he had often seen

parked behind the apartment building. Shortly after parking his car at the building, Mr. Byrd stated that Ms. Herd exclaimed to him, "Lord, Peggy's house is on fire. I bet that boy [defendant] set her house on fire." Mr. Byrd then ran to the burning apartment, kicked in the front door, and entered. Inside he met James Walker, another occupant of the building, who had kicked in and entered the back door. Mr. Byrd observed three separate fires, one in the living room, one in the bedroom, and one in the bathroom. He stated that the living room fire had apparently been started by setting fire to some rags which he saw draped across a sofa. After the fire was extinguished, Mr. Byrd surveyed the apartment and noted that almost everything in it had been destroyed.

James Walker testified that when Hiram Byrd informed him that Ms. Mayo's apartment was on fire, he ran to the back door and kicked it in. Upon entering the apartment he noticed two separate fires, one in the living room and one in the bedroom. He went to the bedroom and observed a pile of rags burning on the bed.

State's witness Chris Rochelle, who lived in the house next door to the apartment building at issue in this case, stated that on the evening of 15 September 1976 he observed a gold car turn into the apartment complex driveway and proceed to the rear of the building. He recognized the car as one he had seen parked in front of Ms. Mayo's apartment on a number of occasions. He could describe the driver only as a black male. Chris Rochelle stated that he saw the same gold automobile five to ten minutes later, traveling from behind the apartment building and out of the driveway at a high rate of speed. Shortly thereafter he noticed smoke and fire coming from Ms. Mayo's apartment.

A Wake County Deputy Sheriff and a State Bureau of Investigation Officer testified that after surveying the damage done by the 15 September 1976 fire and interviewing those present at the scene, they went in search of defendant and found him in the White Oak Road area near Garner, driving a gold Ford Falcon automobile. Upon approaching defendant's vehicle, the law enforcement officers observed rags on the front floor board of the car and rags and a propane torch on the rear floor board behind the driver's seat. The officers questioned defendant but did not arrest him at this time. Defendant was arrested 3 January 1980.

Defendant presented no evidence in his behalf. From the

jury's verdict finding him guilty of arson and the trial court's judgment sentencing him to life imprisonment, defendant appeals as a matter of right pursuant to G.S. 7A-27(a).

*T. Yates Dobson, Jr. for defendant.*

*Attorney General Rufus L. Edmisten by Assistant Attorneys General John C. Daniel, Jr. and Thomas B. Wood for the State.*

COPELAND, Justice.

Defendant raises eight assignments of error on appeal. We have carefully examined each of defendant's assignments and find no error which would entitle defendant to a new trial. For the reasons stated below, we affirm the trial court's judgment sentencing defendant to life imprisonment.

[1] By his first and second assignments of error, defendant contends that the trial court erred in allowing State's witness Olivia Herd to testify that upon discovering the fire in Ms. Mayo's apartment, she immediately exclaimed to Hiram Byrd, the driver of the car in which she was riding, as follows: "That boy [defendant] just set that girl's house on fire." Defendant argues that this testimony was inadmissible as hearsay and as a statement of conclusion prejudicial to defendant.

We find Ms. Herd's testimony admissible under three well established legal theories. Since the statement accusing defendant of the arson was an exclamation in response to the surprising discovery of the fire, made without time for reflection or fabrication, it is admissible as a spontaneous declaration, despite its hearsay nature. *State v. Chapman*, 294 N.C. 407, 241 S.E. 2d 667 (1978); 1 Stansbury's North Carolina Evidence § 164 (Brandis rev. 1973). The statement was also uttered so close in time to the events surrounding the burning that it can be admitted under the *res gestae* exception to the hearsay rule. *State v. Chapman, supra; State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Hunt*, 289 N.C. 403, 222 S.E. 2d 234 (1976). In addition, defendant waived his objection to Ms. Herd's testimony when he failed to object to similar statements made by State's witness Hiram Byrd. Mr. Byrd was allowed to testify, without objection, that immediately after Ms. Herd saw the fire, she exclaimed, "Lord, Peggy's house is on fire. I bet that boy [defendant] set her house on fire." Whenever evidence is admitted over objection and the same or similar evidence is

theretofore or thereafter admitted without objection, the objection is deemed waived. *State v. Henley*, 296 N.C. 547, 251 S.E. 2d 463 (1979); *State v. Chapman, supra; State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974). Mr. Byrd's testimony was certainly of the same import as Ms. Herd's, therefore defendant's objection was waived. Furthermore, we find that any possible prejudice to defendant from Ms. Herd's conclusory statement about matters not within her personal knowledge was cured by her testimony on cross-examination to the effect that she did not actually observe defendant on the premises of Ms. Mayo's apartment on the day of the fire and that she knew nothing of how the fire was started or who started it. Defendant's assignments of error are without merit and overruled.

[2]    Under assignments of error numbered 3,4,6 and 7, defendant argues that the trial court erred in denying his motions to dismiss made at the end of the State's evidence and at the end of all the evidence, and in denying his motions to set aside the verdict and to grant a new trial. It is defendant's contention that the circumstantial evidence presented by the State was insufficient to sustain a verdict finding defendant guilty of arson.

The State concedes that the evidence presented which tended to establish defendant's guilt was all circumstantial. However, the rule for determining the sufficiency of evidence is the same whether the evidence is completely circumstantial, completely direct, or both. *State v. McKnight*, 279 N.C 148, 181 S.E. 2d 415 (1971); *State v. Ewing*, 227 N.C. 535, 42 S.E. 2d 676 (1947); 2 Stansbury's North Carolina Evidence § 210 (Brandis rev. 1973). The evidence is sufficient to sustain a guilty verdict if substantial evidence was presented on every element of the offense charged. "Substantial evidence" is defined as that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *State v. Smith*, 300 N.C. 71, 265 S.E. 2d 164 (1980); *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). In ruling upon defendant's motions challenging the sufficiency of the evidence, the trial court is required to interpret the evidence in the light most favorable to the State, drawing all reasonable inferences therefrom in the State's favor. *State v. King*, 299 N.C. 707, 264 S.E. 2d 40 (1980); *State v. Powell, supra*.

Considered in the light most favorable to the State, the evidence in this case shows that defendant had a motive to harm Ms. Mayo, in that he was angry over her decision to terminate their

relationship, and that he had an opportunity to commit the crime since he knew that Ms. Mayo was not at home on the evening of 15 September 1976. Testimony from several witnesses indicates that defendant was in the immediate vicinity of the apartment building just moments prior to the discovery of the fire, and that he was driving away from the area at a high rate of speed. Further evidence showed that the fire was started by igniting rags which had been piled on the living room sofa and on the bed. Two law enforcement officers testified that they stopped defendant a few hours after the fire, driving a car matching the description given by several witnesses as the automobile in the apartment area just prior to the fire. Upon approaching the car, the officers observed a bale of rags and a propane torch on the floor board. After considering this evidence as a whole, we find that there was substantial evidence presented of defendant's guilt on each essential element of arson, i.e., the malicious and willful burning of the dwelling house of another person. *State v. White*, 291 N.C. 118, 229 S.E.2d 152 (1976); *State v. Arnold*, 285 N.C. 751, 208 S.E.2d 646 (1974). The determination of defendant's guilt or innocence was therefore a question to be answered by the jury, and the trial court acted properly in refusing to grant defendant's motions. Assignments of error 3,4,6 and 7 are overruled.

By his fifth assignment of error, defendant alleges that the trial judge erred in his instructions to the jury by failing to properly explain the law pertinent to the case and by expressing an opinion as to defendant's guilt, in violation of G.S. 15A-1232. Specifically, defendant quotes the following passage from the instructions as constituting an expression of opinion: ". . . that Carlie Wright intended to commit arson, that is, that he intended to set fire to and to burn up the dwelling of Peggy Mayo, and that he did set fire to rags that in turn proximately caused some physical damage by fire . . . ." It is well settled in this jurisdiction that in determining the propriety of the trial judge's charge to the jury, the reviewing court must consider the instructions in their entirety, and not in detached fragments. *State v. Rogers*, 299 N.C. 597, 264 S.E. 2d 89 (1980); *State v. Matthews*, 299 N.C. 284, 261 S.E. 2d 872 (1980); *State v. Alston*, 294 N.C. 577, 243 S.E. 2d 354 (1978). Defendant in this case has extracted a phrase from the instructions and urges us to consider it without reference to the context in which it was spoken. His request is contrary to the principles of law governing our permissible scope of review and therefore cannot be granted. The passage quoted by

defendant was preceded by the following introductory statement: "So I charge if you find from the evidence and beyond a reasonable doubt that on or about September 15, 1976, that Carlie Wright intended to commit arson . . . ." The trial judge then ended the passage with the instruction that if, and only if, the jury found all the preceding things to be true beyond a reasonable doubt, then it would be their duty to return a verdict of guilty of attempted arson. This paragraph, considered as a whole, was a proper statement of the law regarding attempted arson, not an expression of opinion by the trial judge. We have carefully considered the entire charge to the jury and find no misstatement of the law or expression of opinion prejudicial to defendant. Defendant's assignment of error is overruled.

[3] By his eighth assignment of error, defendant argues that by sentencing him to life imprisonment on 15 May 1980, the trial court imposed an *ex post facto* punishment upon him in violation of his rights guaranteed under the United States and North Carolina Constitutions. Article I, §10 of the United States Constitution and Article I, §16 of the North Carolina Constitution forbid this State to pass an *ex post facto* law. Any legislation which increases the punishment for a crime between the time the offense was committed and the time a defendant is punished therefor is considered an invalid *ex post facto* law as applied to that defendant. *State v. Detter*, 298 N.C. 637, 260 S.E. 2d 567 (1979); *State v. Pardon*, 272 N.C. 72, 157 S.E. 2d 698 (1967). Defendant claims that pursuant to the statutes in effect at the time of the burning on 15 September 1976, he would have been eligible for parole under a sentence of life imprisonment after serving ten years. Instead, he argues, he was sentenced under statutes embodying a 1977 amendment which changed the time period required before he could be considered eligible for parole from ten to twenty years. It is defendant's contention that this extension of the period he must serve before being considered for parole is an increase in his punishment which occurred after the offense was committed, and therefore the statutes under which he was sentenced are *ex post facto* as applied to him. Defendant's allegations would be correct if the statutes at issue actually read as defendant claims that they do. However, we find that the period of imprisonment required before defendant could be considered for parole was twenty years under the statutes in effect both at the time of the offense and at the time he was sentenced on 15 May 1980. G.S. 148-58 was amended in 1973, which

amendment became effective 1 July 1974, to provide that the period a prisoner sentenced to life imprisonment must serve before being eligible for parole would be changed from ten to twenty years. This twenty year provision was in effect at the time of the burning in 1976. G.S. 148-58 was repealed by the 1977 Session Laws, effective 1 July 1978, and replaced by G.S. 15A-1371. G.S. 15A-1371, which was still in effect at the time defendant was sentenced, also provides that one sentenced to life imprisonment must serve twenty years before being considered for parole. Therefore, the terms of defendant's punishment were identical under the statutes in effect at the time of the offense and the statutes in effect at the time he was sentenced, and defendant's allegation that the trial court imposed an *ex post facto* punishment upon him is without merit.

After careful examination of the entire record before this Court on appeal, we hold that defendant received a fair trial free from prejudicial error.

No error.

Justice MEYER did not participate in the consideration or decision of this case.