STATE OF NORTH CAROLINA v. OLLIE BELLAMY, JR. AND NATHANIEL
BELLAMY

No. 8211SC1109

(Filed 18 October 1983)

1. Criminal Law § 92.1— joint trial of defendants proper
     In a prosecution for robbery with a firearm and assault with a deadly weapon with intent to kill, the trial court properly granted the State's motion for a joint trial pursuant to G.S. 15A-926 since defendants' respective positions at trial were not antagonistic and since the State produced ample evidence implicating both defendants in the same offenses.

2. Criminal Law § 97.1— rebuttal testimony—admissible against codefendant
     The trial court properly allowed the State to offer rebuttal testimony from two witnesses where one witness's testimony could have been introduced in the State's case in chief pursuant to G.S. 15A-1226(a), and where the other testimony was admissible as an admission by the codefendant.

3. Criminal Law § 89.5— corroborating testimony—slight variance—properly admitted
     The trial court properly allowed a witness to offer corroborating testimony regarding a telephone conversation with an earlier witness where

the witness's testimony was consistent with the earlier witness's testimony regarding the robbery for which defendants were being tried and the existence of the phone conversation, but where there were inconsistencies as to when the phone call occurred and the exact words spoken.

**4. Assault and Battery § 14.4; Robbery § 4.3— assault with a deadly weapon with intent to kill and armed robbery—sufficiency of evidence**

In a prosecution for assault with a deadly weapon with intent to kill and robbery with a firearm, the trial court properly denied defendants' motion to dismiss all charges at the end of the State's evidence where the evidence tended to show that a witness drove defendants to "Short Stop" where they got out of a car, a burgundy Cutlass owned by defendant Bellamy; at around the same time that evening the clerk at "Short Stop" was closing the store when he was robbed by two males wearing white masks; as the same. men were running out of the store, they fired at another vehicle occupied by two people who saw these men still wearing masks run from "Short Stop" to a burgundy car similar to the one owned by defendant Bellamy; and where a witness testified that defendant Bellamy owned two white masks like ones worn during the robbery and that he had told her he was planning to use them for a robbery.

APPEAL by defendants from *Britt, Samuel E., Judge*. Judgment entered 19 May 1982 in Superior Court, LEE County. Heard in the Court of Appeals 29 August 1983.

Defendants Ollie and Nathaniel Bellamy were charged in separate indictments with the same offenses, to wit, robbery with a firearm and assault with a deadly weapon with intent to kill. Prior to trial, the Court granted the State's motion, pursuant to G.S. 15A-926 to join the cases against each defendant for trial. The jury found defendants guilty of both offenses and active sentences were imposed. Both defendants appeal.

The State's evidence tended to show:

At around 10:45 p.m. on 7 August 1981, Donald Strother, a clerk at "Short Stop," a store on Carbonton Road in Sanford, North Carolina, was closing the store when two males, wearing white masks, robbed him at gunpoint.

Cindy Gunter and Donald Cox were driving past "Short Stop" at around 10:45 p.m. on 7 August 1981 when they saw two men, wearing white masks, run out of the store and head toward a burgundy Monte Carlo or Cutlass automobile. Ms. Gunter noticed that one of the men was carrying something. Mr. Cox saw one of the men raise a gun and fire in their direction. Mr. Cox and

Ms. Gunter ducked to the floorboard of their car and heard the gun fire about five shots, one shot hitting their car.

Ruth Dowdy testified that at around 10:45 p.m., on 7 August 1981, she drove both defendants to "Short Stop" on Carbonton Road in Sanford. She drove Ollie Bellamy's car, a burgundy Cutlass. In the car, they discussed good places to rob. The defendants got out of the car at "Short Stop." A short time thereafter, she saw two people with white masks enter the store. Ten minutes later, the defendants came running toward the car. She drove the defendants to her home where they then sorted money. Sometime later, Ms. Dowdy spoke with a friend on the telephone.

Prior to 7 August, Ms. Dowdy had seen masks similar to the ones worn in the robbery on her dresser at home. Ollie Bellamy had been staying with Ms. Dowdy. Ollie had told her that Nathaniel had had them made and that they were planning to "do a robbery." After the robbery, Ms. Dowdy noticed that Ollie had a gun.

Three weeks after the robbery, Ms. Dowdy was taken into police custody where she waived her Miranda rights and gave a statement to a Sanford police detective that substantially corroborated her testimony at trial. On that same day she was arrested and jailed. Ms. Dowdy testified pursuant to a plea bargain with the State.

The evidence for defendant, Nathaniel Bellamy, tended to show:

Darlene Hayes, Nathaniel's girlfriend, testified that Nathaniel was with her in Burgaw, North Carolina, during the evening of the robbery on 7 August.

Former Deputy Sheriff George Wright testified that when he picked up defendant, Nathaniel Bellamy, Darlene Hayes asked why he was being picked up when he had been with her.

Mattie Bellamy, Nathaniel's mother, testified that Nathaniel left her house in Burgaw, North Carolina at about ten to seven on the evening of 7 August to go to his girlfriend's house and that she saw him again at around midnight when he arrived home.

On rebuttal, the State's evidence tended to show:

Sharon Smith, a friend of Ms. Dowdy's, testified that at around 8:00 p.m. on the night of the robbery, Ms. Dowdy and both defendants stopped at her home in Sanford, where they discussed possible places to rob. Later that night, Ms. Smith talked to Ms. Dowdy on the telephone and Ms. Dowdy told Ms. Smith that they had robbed a "pantry."

Ms. Dowdy was placed in jail on 28 August 1981. While in jail, she overheard Nathaniel tell Ollie that he was going to get his girlfriend to say he was in Burgaw on 7 August.

*Attorney General Edmisten, by Tiare B. Smiley, Assistant Attorney General, for the State.*

*Gregory Davis, for defendant appellant Nathaniel Bellamy; and Edward L. Bullard, Jr., for defendant appellant Ollie Bellamy, Jr.*

VAUGHN, Chief Judge.

I.

[1] Both defendants contend that the trial court erred in granting the State's motion for a joint trial. This contention is without merit. G.S. 15A-926 provides that charges against two or more defendants may be joined for trial when each of the defendants is charged with accountability for each offense. Both defendants in this case were charged with the same offenses. Furthermore, the State's evidence against each defendant was the same. "Consolidation of cases for trial is generally proper when the offenses charged are of the same class and are so connected in time and place that evidence at trial upon one indictment would be competent and admissible on the other." *State v. Brower*, 289 N.C. 644, 658, 224 S.E. 2d 551, 561-62 (1976).

Pursuant to G.S. 15A-926(c)(2), severance is proper when necessary to promote a fair determination of the guilt or innocence of one or more of the defendants. Severance was not necessary to a fair trial in this case. The decision whether to try defendants separately or jointly was within the discretion of the trial court and absent a showing that the appellants were deprived of a fair trial by consolidation, exercise of such discretion should not be disturbed on appeal. *State v. Brower, supra; see also State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677 (1972).

Defendants also contend that they had antagonistic defenses and that, therefore, joinder was improper. Nathaniel Bellamy offered evidence attempting to establish an alibi, while Ollie Bellamy did not offer any evidence. We do not find these separate defenses to be antagonistic. Neither defendant attempted to incriminate the other. *See State v. Smith*, 301 N.C. 695, 272 S.E. 2d 852 (1981); *State v. Madden*, 292 N.C. 114, 232 S.E. 2d 656 (1977); *State v. Wilhite; State v. Rankin; State v. Rankin*, 58 N.C. App. 654, 294 S.E. 2d 396, *cert. denied* and *appeal dismissed*, 307 N.C. 129 (1982).

[2] Defendant Ollie Bellamy further contends that the State introduced rebuttal testimony against Nathaniel Bellamy that was unfair, prejudicial and inadmissible against himself. We disagree. The State offered rebuttal testimony from two witnesses, Sharon Smith and Ruth Dowdy. Defendant concedes that Ms. Smith's testimony could have been introduced in the State's case in chief. G.S. 15A-1226(a) provides in part: "The judge may permit a party to offer new evidence during rebuttal which could have been offered in the party's case in chief . . ." We find no error in admitting Sharon Smith's testimony. Ruth Dowdy testified that Ollie Bellamy told her "to act like I didn't know what happened" in regard to Nathaniel Bellamy's alibi. This testimony was admissible as an admission by Ollie Bellamy.

[1] The State had ample evidence against both defendants. It did not rely on refuting rebuttal testimony to prove its case. In *State v. Lee*, 28 N.C. App. 156, 220 S.E. 2d 164 (1975), defendants were jointly tried for armed robbery and kidnapping. The first defendant did not testify. The second defendant testified that he was coerced into committing the crimes by the first defendant's threats. We held that separate trials were not warranted since the State did not rely on testimony of the defendants, but rather, offered plenary evidence of both defendants' guilt. The same rationale applies against defendants here.

Since defendants' respective positions at trial were not antagonistic and since the State produced ample evidence implicating both defendants in the same offenses, joinder was proper and defendants received a fair trial. *See State v. Nelson*, 298 N.C. 573, 260 S.E. 2d 629 (1979); *State v. Wilhite; State v. Rankin; State v. Rankin, supra.*

## II.

Both defendants contend that the trial court erred in allowing Sharon Smith to testify for the State on rebuttal. We find no error.

[2] Defendant Ollie Bellamy contends that since he offered no evidence, Ms. Smith's rebuttal testimony should have been limited to defendant Nathaniel Bellamy. As discussed in Part I, Ms. Smith could have testified for the State as part of its case in chief. Pursuant to G.S. 15A-1226 (which permits the State to offer new evidence during rebuttal which could have been offered as part of its case in chief), the trial judge was correct in denying Ollie Bellamy's motions to sever and exclude such testimony.

[3] Both defendants contend that Ms. Smith's testimony, admitted under the theory that it corroborated Ms. Dowdy's testimony, should have been excluded because it was not corroborative. We think the trial judge was correct in admitting Ms. Smith's testimony.

Corroborative testimony is generally allowed in this State when a witness's veracity has been impugned in any way. 1 Brandis on North Carolina Evidence § 51 (1982). Application of this liberal rule allows trial judges wide discretion in deciding whether to admit evidence they believe may aid the jury in appraising credibility. 1 Brandis on North Carolina Evidence § 52 (1982); *State v. Henley*, 296 N.C. 547, 251 S.E. 2d 463 (1979); *Gibson v. Whitton*, 239 N.C. 11, 79 S.E. 2d 196 (1953). Cross examination of Ms. Dowdy by both defendants and evidence by defendant Nathaniel Bellamy weakened Ms. Dowdy's testimony. We find no abuse of discretion in admitting corroborative testimony from Ms. Smith.

Corroborative testimony is testimony which tends to strengthen, confirm or make more certain the testimony of another witness. *State v. Rogers*, 299 N.C. 597, 264 S.E. 2d 89 (1980). It may consist of prior consistent statements by the witness or any other proper evidence tending to restore confidence in the witness's truthfulness and veracity. 1 Brandis on North Carolina Evidence § 50 (1982) (n. 39 and cases cited therein). Ms. Smith's testimony regarding a prior statement by Ms. Dowdy confirmed and strengthened Ms. Dowdy's testimony.

Although there was some variation in the testimonies of Ms. Dowdy and Ms. Smith, such variances do not warrant exclusion of Ms. Smith's testimony. The testimonies of the two women were generally consistent. Ms. Dowdy testified that during the evening of 7 August or on 8 August: "I know I was talking to my — my brothers and I was telling them what we done. . . . And I was talking to my friend and I called her, trying not to let Ollie hear me . . ." Ms. Smith, a friend of Ms. Dowdy's, testified that she called Ms. Dowdy on the evening of 7 August and Ms. Dowdy told her "that they had robbed a Pantry and she was afraid to tell me . . ." Inconsistencies exist as to when the phone call occurred and the exact words spoken. The content of Ms. Smith's testimony, however, was consistent with Ms. Dowdy's testimony regarding the robbery in general and the phone conversation specifically. "[I]f the testimony offered in corroboration is generally consistent with the witness's testimony, slight variations will not render it inadmissible. Such variations affect only the credibility of the evidence which is always for the jury." *State v. Warren,* 289 N.C. 551, 557, 223 S.E. 2d 317, 321 (1976).

Before Ms. Smith was allowed to testify regarding her telephone conversation with Ms. Dowdy, the trial judge instructed the jury: "[T]his conversation is being allowed into evidence on the theory it may corroborate the prior witness that has been on the witness chair, Ruth Dowdy. You will be the final judge as to whether it does or does not corroborate the prior testimony of Ruth Dowdy." We agree with such instruction. The issue was one of credibility, not admissibility, an issue the jury ultimately decided.

Defendant Nathaniel Bellamy contends that Ms. Smith's testimony that Ms. Dowdy told her they had robbed a Pantry referred to a different crime and was, therefore, inadmissible. We find no support in the Record for such contention. We take judicial notice of the fact that people sometimes refer to small roadside stores as "pantries." In fact, another of the State's eyewitnesses referred to "Short Stop" as "The Pantry":

Witness: "I saw two men running out of the Pantry."

Court: "The Pantry, ma'am?"

Witness: "The Short Stop."

Ms. Smith's testimony as to her personal knowledge was admissible for substantive purposes. Her testimony as to her telephone conversation with Ruth Dowdy was admissible for corroborative purposes.

III.

[4] Defendant Ollie Bellamy contends that the trial court erred in denying defendants' motion to dismiss all charges at the end of the State's evidence. Defendant's contention is without merit.

The general rule is that a motion for nonsuit should be overruled if, when the evidence is viewed in the light most favorable to the State, there is evidence from which a jury could find that the offense charged has been committed and that the defendant committed it. *State v. Calloway,* 305 N.C. 747, 291 S.E. 2d 622 (1982); *State v. Benton,* 299 N.C. 16, 260 S.E. 2d 917 (1980). The State's evidence showed, in pertinent part, the following: At close to 11:00 p.m. on 7 August 1981, Ruth Dowdy drove the defendants to "Short Stop" where they got out of the car. Ms. Dowdy was driving a burgundy Cutlass owned by defendant, Ollie Bellamy. On the same evening, at around 10:45 p.m., Donald Struthers, the clerk at "Short Stop" was closing the store when he was robbed by two males wearing white masks. As these same men were running out of the store, they fired at another vehicle occupied by Cindy Gunter and Donald Cox. Ms. Gunter and Mr. Cox saw these men, still wearing masks, run from "Short Stop" to a burgundy car similar to the one owned by defendant. Ruth Dowdy testified that Ollie Bellamy owned two white masks like the ones worn during the robbery and that he had told her he was planning to use them for a robbery.

We think that the State produced substantial evidence from which a jury could find that the offenses were committed and that defendants were the perpetrators.

IV.

Defendant, Nathaniel Bellamy, contends that it was reversible error for the trial judge to deny his motion for a mistrial at the close of the State's evidence or at the close of all the evidence. He contends that the trial judge committed error resulting in substantial and irreparable prejudice to defendant's case by granting the State's motion to consolidate the cases

against Nathaniel and Ollie Bellamy for trial. The general rule is that the decision as to whether substantial and irreparable prejudice has occurred lies within the court's discretion and, absent a showing of abuse of that discretion, the decision of the trial court will not be disturbed on appeal. *State v. Allen,* 50 N.C. App. 173, 272 S.E. 2d 785 (1980), *appeal dismissed,* 302 N.C. 399 (1981). We find no abuse of discretion by the trial judge. Defendant received a fair trial.

No error.

Judges WHICHARD and PHILLIPS concur.