649 S.E.2d 913 (2007)
In the Matter of B.D.N.
No. COA07-44.
Court of Appeals of North Carolina.
September 18, 2007.
Attorney General Roy Cooper, by Assistant Attorney General Rebecca E. Lem, for the State.
McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III and Terri W. Sharp, New Bern, for Respondent.
McGEE, Judge.
A juvenile petition was filed on 17 May 2006 charging B.D.N. with
communicat[ing] a report by typing `Bomb at Lunch' on a Texas Instruments TI-83 Plus Calculator to Swansboro Middle School knowing or having reason to know the report to be false, that there was located in a school a device designed to destroy or damage the building by explosion in violation of [N.C. Gen.Stat. §] 14-69.1(a).
At a hearing, E.P., a student at Swansboro Middle School, testified that she went to her math class on 8 May 2006, got a calculator, and sat down. When she turned on the calculator, she saw the words "Bomb at Lunch" displayed on the calculator. E.P. raised her hand and told her teacher, Myra Hager (Ms. Hager), that she needed to show her something on the calculator. Ms. Hager told E.P. not to disrupt class, and Ms. Hager did not look at the calculator. After the math class, E.P. told her social studies teacher, Katie Bolinger (Ms. Bolinger), what she had seen on the calculator. Ms. Bolinger went to look at the calculator and then discussed the situation with Ms. Hager. E.P. also testified that during the math class, she showed the calculator to another student, B.G.B.G. testified that she was in math class with E.P. on 8 May 2006 and saw the words "Bomb at Lunch" on the calculator E.P. was using.
Ms. Hager testified she was a teacher at Swansboro Middle School, and that during her first period math class on 8 May 2006, E.P. asked to show Ms. Hager something on her calculator. Ms. Hager told E.P. to put the calculator away because the class was not going to use calculators. However, after the math class was over, Ms. Bolinger and E.P. came to Ms. Hager's class and showed Ms. Hager the calculator that E.P. had been using. Ms. Hager saw the words "Bomb at Lunch" displayed on the calculator and took the calculator to the office.
Ms. Hager testified that the calculators hung on a wall in her classroom and that each student was assigned to a calculator. Ms. Hager said that E.P. was assigned to calculator fourteen for first period, B.D.N. was assigned to calculator fourteen for second period, and another student, who had been absent the previous Friday, was assigned to the same calculator for third period. Ms. Hager further testified that the students had used the calculators to take a test on the previous Friday, 5 May 2006. Ms. Hager also testified that other students had used calculators to take a make-up test before first period on 8 May 2006, but she did not recall that any of those students used calculator fourteen.
Ms. Bolinger testified that E.P. came to Ms. Bolinger's second period class on 8 May 2006 and said she needed to show Ms. Bolinger something on a calculator. Ms. Bolinger went with E.P. to Ms. Hager's class and saw the words "Bomb at Lunch" on the calculator that E.P. showed her. Ms. Bolinger testified that she reported this to the office.
Christine Andrea (Ms. Andrea) testified that she was the principal of Swansboro Middle School on 8 May 2006. She was not on campus at the time of the incident, but she was notified by phone and returned to school. Ms. Andrea saw the words "Bomb at Lunch" on the calculator. She interviewed several students including E.P., B.D.N., and B.G. *915 When no one stated that the calculator incident was a prank, Ms. Andrea evacuated the school.
C.J. testified she was a student at Swansboro Middle School. A few days after the bomb threat, she heard B.D.N. tell someone that B.D.N. "meant it all as a prank, and [B.D.N.] didn't think they'd take it actual [sic] seriously."
S.B. testified she was a student at Swansboro Middle School and that a day after the bomb threat, she heard B.D.N. tell another student, M.C., that "[t]he reason [B.D.N.] did the bomb threat was [be]cause [B.D.N.] thought it would be fun to get out of school." At the close of the evidence, B.D.N. moved to dismiss the petition, and the trial court denied the motion. The trial court adjudicated B.D.N. a delinquent juvenile on 22 August 2006 for violation of N.C. Gen.Stat. § 14-69.1(a). The trial court also entered a disposition order that, inter alia, placed B.D.N. on probation for twelve months. B.D.N. appeals.

I.
B.D.N. argues the trial court erred by denying her motion to dismiss the petition for insufficiency of the evidence. In reviewing a motion to dismiss a juvenile petition, the evidence must be considered in the light most favorable to the State, which is entitled to every reasonable inference that may be drawn from the evidence. In re Brown, 150 N.C.App. 127, 129, 562 S.E.2d 583, 585 (2002). "[I]n order to withstand a motion to dismiss the charges contained in a juvenile petition, there must be substantial evidence of each of the material elements of the offense charged." In re Bass, 77 N.C.App. 110, 115, 334 S.E.2d 779, 782 (1985). "`[T]he rule for determining the sufficiency of evidence is the same whether the evidence is completely circumstantial, completely direct, or both.'" State v. Crouse, 169 N.C.App. 382, 389, 610 S.E.2d 454, 459 (quoting State v. Wright, 302 N.C. 122, 126, 273 S.E.2d 699, 703 (1981)), disc. review denied, 359 N.C. 637, 616 S.E.2d 923 (2005).
N.C. Gen.Stat. § 14-69.1(a) (2005) states:
Except as provided in subsection (c) of this section, any person who, by any means of communication to any person or group of persons, makes a report, knowing or having reason to know the report is false, that there is located in or in sufficient proximity to cause damage to any building . . . any device designed to destroy or damage the building . . . by explosion, blasting or burning, is guilty of a Class H felony.
The elements of this offense relevant to the present case are that B.D.N. (1) reported by any means of communication to any person or group of persons that a bomb was located in a building, (2) that this report was false, and (3) that B.D.N. knew or had reason to know that the report was false. See N.C.G.S. § 14-69.1(a); N.C.P.I.-Crim. 215.85 (2006).
B.D.N. argues that no witnesses testified that they saw her type the words "Bomb at Lunch" into the calculator. However, despite this contention, we hold there was substantial evidence of each element of the offense and of B.D.N.'s being the perpetrator. According to Ms. Hager, B.D.N. should have been the last student to use calculator fourteen prior to E.P. finding the message on 8 May 2006. Two students, E.P. and B.G., testified they saw the words "Bomb at Lunch" on the calculator E.P. was using on 8 May 2006. Ms. Hager, Ms. Bolinger, and Ms. Andrea also testified they saw the message "Bomb at Lunch" on the calculator on 8 May 2006. C.J. testified that a few days after the bomb threat, she heard B.D.N. say that she "meant it all as a prank, and [B.D.N.] didn't think they'd take it actual [sic] seriously." S.B. testified that a day after the bomb threat, she heard B.D.N. tell another student, M.C., that "[t]he reason [B.D.N.] did the bomb threat was [be]cause [B.D.N.] thought it would be fun to get out of school." We hold this was substantial evidence of each element of the offense and of B.D.N.'s being the perpetrator.
B.D.N. attempts to challenge the credibility of several witnesses. However, in reviewing a motion to dismiss, a "trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility." State v. Parker, 354 *916 N.C. 268, 278, 553 S.E.2d 885, 894 (2001), cert. denied, Parker v. North Carolina, 535 U.S. 1114, 122 S.Ct. 2332, 153 L.Ed.2d 162 (2002). We overrule this assignment of error.

II.
B.D.N. next argues the trial court committed plain error by denying her motion to dismiss because she was improperly charged and convicted under N.C.G.S. § 14-69.1(a). Specifically, she argues that the appropriate statute under which she should have been charged is N.C. Gen.Stat. § 14-69.1(c), which deals specifically with public buildings. However, our Supreme Court has applied the plain error rule only to issues relating to jury instructions or the admissibility of evidence. State v. Atkins, 349 N.C. 62, 81, 505 S.E.2d 97, 109-10 (1998), cert. denied, Atkins v. North Carolina, 526 U.S. 1147, 119 S.Ct. 2025, 143 L.Ed.2d 1036 (1999). Because the issue B.D.N. attempts to raise does not fall within these categories, this assignment of error is procedurally barred and without merit.

III.
B.D.N. argues that "judgment should be arrested because [B.D.N.] was charged, tried, and convicted under the wrong statute for an offense involving a school." Specifically, B.D.N. argues that because she was charged under the wrong statute, the trial court lacked subject matter jurisdiction. "When a petition is fatally deficient, it is inoperative and fails to evoke the jurisdiction of the court." In re J.F.M., 168 N.C.App. 143, 150, 607 S.E.2d 304, 309, disc. review denied, 359 N.C. 411, 612 S.E.2d 320 (2005). "`The question of subject matter jurisdiction may properly be raised for the first time on appeal.'" State v. Jones, 172 N.C.App. 161, 163, 615 S.E.2d 896, 897 (quoting Bache Halsey Stuart, Inc. v. Hunsucker, 38 N.C.App. 414, 421, 248 S.E.2d 567, 571 (1978), disc. review denied, 296 N.C. 583, 254 S.E.2d 32 (1979)), disc. review denied, 360 N.C. 72, 624 S.E.2d 365 (2005).
B.D.N. argues that she should have been charged under N.C. Gen.Stat. § 14-69.1(c), which applies to "any public building," rather than under N.C.G.S. § 14-69.1(a), which applies to "any building." N.C. Gen.Stat. § 14-69.1(c) (2005) provides:
Any person who, by any means of communication to any person or groups of persons, makes a report, knowing or having reason to know the report is false, that there is located in or in sufficient proximity to cause damage to any public building any device designed to destroy or damage the public building by explosion, blasting, or burning, is guilty of a Class H felony. Any person who receives a second conviction for a violation of this subsection within five years of the first conviction for violation of this subsection is guilty of a Class G felony. For purposes of this subsection, "public building" means educational property as defined in G.S. 14-269.2(a)(1), a hospital as defined in G.S. 131E-76(3), a building housing only State, federal, or local government offices, or the offices of State, federal, or local government located in a building that is not exclusively occupied by the State, federal, or local government.
In support of her argument, B.D.N. cites Jones, where the defendant was an employee of a local Alcohol Beverage Control Board, who was charged with embezzlement under N.C. Gen.Stat. § 14-92, which governs embezzlement by a "`public officer of any county, unit or agency of local government, or local board of education[.]'" Jones, 172 N.C.App. at 162-64, 615 S.E.2d at 896-98 (quoting N.C. Gen.Stat. § 14-92). Our Court held that the defendant was "not a public officer of any county, unit or agency of local government, or local board of education." Id. at 165, 615 S.E.2d at 898. As a local ABC Board employee, the "defendant should have been charged under N.C. Gen.Stat. § 14-90." Id. Therefore, because the defendant was charged under N.C.G.S. § 14-92, our Court held that the trial court lacked jurisdiction and vacated the trial court's judgments. Id.
Jones is distinguishable from the present case. In the present case, as we have already held, there was substantial evidence of every element of making a false report concerning a destructive device under N.C.G.S. § 14-69.1(a). In contrast, in Jones, the State *917 could not prove an essential element of the offense with which the defendant was charged  that the defendant was a public officer of any county, unit or agency of local government, or local board of education. Therefore, in Jones, the defendant was charged under the wrong statute, and the trial court lacked subject matter jurisdiction. Although N.C.G.S. § 14-69.1(c) specifically defines the offense of making a false report concerning a destructive device with respect to a public building, the State was not required to charge B.D.N. under this subsection of the statute. Clearly, "any building," as used in N.C.G.S. § 14-69.1(a), includes a public building. Therefore, the State could have charged B.D.N. under either subsection. By enacting the separate offense under N.C.G.S. § 14-69.1(c), the General Assembly only intended to provide for a tougher penalty in the case of successive violations.
B.D.N. also relies upon State v. Goodson, 178 N.C.App. 557, 631 S.E.2d 842 (2006), where our Court recognized that
"[a]s with any other statute, the legislative intent controls the interpretation of a criminal statute. . . . We generally construe criminal statutes against the State. . . . However, `[t]he canon in favor of strict construction [of criminal statutes] is not an inexorable command to override common sense and evident statutory purpose. . . . Nor does it demand that a statute be given the "narrowest meaning"; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers.'"
Id. at 559, 631 S.E.2d at 843-44 (quoting State v. Jones, 358 N.C. 473, 477-78, 598 S.E.2d 125, 128 (2004) (internal citations omitted)). Our Court also stated: "But civil or criminal, `[w]hen the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning.'" Id. at 559, 631 S.E.2d at 844 (quoting Lemons v. Old Hickory Council, 322 N.C. 271, 276, 367 S.E.2d 655, 658 (1988)). Employing these principles, our Court held that a locked desk was not a "safe" or "vault" for purposes of the offense of safecracking. Id. at 558-60, 631 S.E.2d 842, 631 S.E.2d at 843-44. However, Goodson does not support B.D.N.'s position in the present case. Under the plain language of N.C.G.S. § 14-69.1(a), under which B.D.N. was charged, a school building, although a public building, would also qualify as "any building."
B.D.N. further relies upon language from Fowler v. Valencourt, 334 N.C. 345, 435 S.E.2d 530 (1993), that "`[w]here one of two statutes might apply to the same situation, the statute which deals more directly and specifically with the situation controls over the statute of more general applicability.'" Id. at 349, 435 S.E.2d at 532 (quoting Trustees of Rowan Tech. v. Hammond Assoc., 313 N.C. 230, 238, 328 S.E.2d 274, 279 (1985)). However, in Fowler, our Supreme Court employed this principle in determining which statute of limitations provision applied to the plaintiff's tort actions. Id. at 349-50, 435 S.E.2d at 532-33. B.D.N. has not cited any decision in which this principle was applied in a situation analogous to the present case. For the reasons stated above, we overrule this assignment of error.
Affirmed.
Judges STEPHENS and SMITH concur.